1  Michael R. Williams (SBN 192222)
   mwilliams@bmkattorneys.com
2  BIENERT, MILLER & KATZMAN, PLC
3  903 Calle Amanecer, Suite 350
   San Clemente, California 92673
4  Tel: (949) 369-3700/Fax: (949) 369-3701

5  Ryan A. Ray (OBN 22281) *Pro Hac Vice Request to be Filed*
   NORMAN WOHLGEMUTH CHANDLER & JETER, P.C.
6  401 S. Boston Ave.
   2900 Mid-Continent Tower
7  Tulsa, OK 74013
   Tel: (918) 583-7571/Fax: (918) 586-7846
8
9  CHRISTOPHER HARTSHORN
   Attorneys for Plaintiff

10            **UNITED STATES DISTRICT COURT**

11   **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

12

13  CHRISTOPHER HARTSHORN,          Case No.  **SACV13-01817 AG (JPRx)**

14            Plaintiff,            **COMPLAINT FOR:**

15       v.
                                    **(1)  VIOLATION OF SECTION 970 OF**
16  WILLIAM SONSMA AND                   **THE CALIFORNIA LABOR CODE**
    WHOLESALE CAPITAL
17  CORPORATION,
                                    **(2)  BREACH OF CONTRACT**
18            Defendants.

19                                  **(3)  WRONGFUL TERMINATION.**

20                                  **DEMAND FOR JURY TRIAL**

21

22

23       Plaintiff, Christopher Hartshorn, for his complaint against Defendants, William

24  Sonsma and Wholesale Capital Corporation alleges as follows:

25                        **NATURE OF THE ACTION**

26       1.    This is an action for violation of Section 970 of the California Labor Code

27  for solicitation of employment by misrepresentation; for breach of contract; and for

28  wrongful termination of employment.

**THE PARTIES**

2. Plaintiff, Christopher Hartshorn ("Hartshorn") is an individual who is domiciled in the State of Oklahoma, in Tulsa County. Following his wrongful termination by Wholesale Capital Corporation and William Sonsma, Hartshorn moved, with his family, to Tulsa, Oklahoma with the intention of permanently relocating there.

3. Defendant, William Sonsma ("Sonsma") is an individual who is domiciled in the State of California, in Orange County.

4. Defendant, Wholesale Capital Corporation ("WCC") is a corporation organized and existing under the laws of the State of California, with its principal place of business located in Riverside County, California. WCC also maintains an office in Orange County, California.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action in accordance with 28 U.S.C § 1332. This matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in accordance with 28 U.S.C § 1391(b)(1) because the residence of Sonsma and the principal place of business of WCC are in this judicial district. Venue is also proper in accordance with 28 U.S.C § 1391(b)(2) because a substantial portion of the events giving rise to the dispute at issue occurred in this judicial district.

**GENERAL ALLEGATIONS**

7. Hartshorn is a certified public accountant. Upon graduation from San Diego State University in 2004, Hartshorn was employed by Ernst & Young in its San Diego office ("EY"). Hartshorn's career at EY steadily advanced, and by 2009, Hartshorn had attained the position of audit manager.

8. Fidelity Bancorp Funding, Inc. ("FBF") is a California corporation. Prior to approximately June, 2011, FBF operated its business from offices in Orange, California (the "Orange Office").

9. WCC operates offices in Moreno Valley, California, Westlake Village, California, and Downey, California. In approximately June, 2011, WCC took over FBF's operations in the Orange Office.

10. Upon information and belief, Sonsma owns 100% of the outstanding equity interests of FBF and 50% of the outstanding equity interests of WCC.

11. Sonsma is Hartshorn's uncle. In the summer of 2010, Sonsma suggested to Hartshorn that he come to work for FBF and WCC, and train to become the chief executive officer and chief operation officer of those companies. The idea, according to Sonsma, was that Hartshorn would be essentially training to replace Sonsma's role at FBF and WCC.

12. The employment discussions between Sonsma and Hartshorn progressed, and on September 17, 2010, Sonsma traveled to the Hartshorn's home in San Diego to present a formal job offer, a copy of which is attached as Exhibit A. During that meeting, Sonsma also presented to Hartshorn a Position Profile, a copy of which is attached as Exhibit B.

13. Hartshorn and his wife had built a very successful life in San Diego. They had lived there for ten years and had an established home surrounded by many friends and family. Hartshorn was on track to become a partner in EY, at which point his income would dramatically increase. Hartshorn's wife was employed by Active Network in San Diego in a high salaried position.

14. Hartshorn and his wife were reluctant to abandon their San Diego life and careers for the job Sonsma had offered Hartshorn during the September 17, 2013 meeting. They concluded that Hartshorn would only accept the job if it also included a clear path to obtain ownership interests in FBF and WCC.

15. Hartshorn communicated the ownership condition to Sonsma. Sonsma responded with a revised job offer which included a vesting schedule for Hartshorn to acquire ownership interests in FBF and WCC from Sonsma. A copy of the revised offer letter is attached as Exhibit C.

1    16.    Hartshorn suggested some clarifications to Sonsma's revised offer letter, and
2    provided Sonsma the tracked changes.  A copy of Hartshorn's suggested clarifications is
3    attached as Exhibit D.

4    17.    Sonsma revised the job offer a second time to include the Hartshorn's
5    clarifications and then renewed the job offer as revised.   On November 21, 2010,
6    Hartshorn accepted the second revision of Sonsma's job offer ("the Letter Agreement").
7    A copy of the Letter Agreement is attached as Exhibit E.

8    18.    The Letter Agreement constitutes Sonsma's express representations to
9    Hartshorn that:

10           A.     Hartshorn's functional title would be "Chief Executive Officer, Chief
11                  Operating Officer".

12           B.     Hartshorn would be employed by FBF and WCC.

13           C.     Hartshorn's employment duties would be to train for and then manage
14                  the operations of FBF and WCC.

15           D.     After two years of continuous employment, Hartshorn would vest in
16                  50% of Sonsma's ownership and profit interests in FBF ("the FBF
17                  Interests").

18           E.     After three years, Hartshorn would vest in 50% of Sonsma's profit
19                  interest in WCC; and after five years, Hartshorn would vest in 50% of
20                  Sonsma's ownership interest in WCC (collectively, the "WCC
21                  Interests").

22    19.    In reasonable reliance upon Sonsma's representations in the Letter
23    Agreement, Hartshorn resigned his employment with EY, he and his wife moved from
24    San Diego to Orange County, and his wife undertook a commute to San Diego so as to
25    maintain her job with Active Network.

26    20.    Hartshorn began his employment with FBF and WCC in early January, 2011,
27    working out of the Orange Office .

28

21. During the course of his employment, Hartshorn repeatedly requested that Sonsma provide a plan and schedule for Hartshorn's training and transition to the CEO/COO role. Sonsma refused to provide any plan or schedule for the transition.

22. In early January, 2013—after the vesting period for his ownership and profit interests in FBF had been completed—Hartshorn requested that Sonsma transfer to Hartshorn the FBF Interests as required by the express terms of the Letter Agreement.

23. Sonsma refused to make the transfers, contending variously that:

A. His obligation under the Letter Agreement to transfer the FBF Interests to Hartshorn was contingent upon Hartshorn's satisfactory completion of the duties described in the Position Profile, and that Hartshorn had not satisfactorily completed those duties;

B. The transfer of the Orange Office operations to WCC invalidated the Letter Agreement; and

C. Hartshorn's employment with FBF ended when the Orange Office operations were transferred to WCC, and therefore Hartshorn did not meet the two year vesting requirement for the FBF Interests.

24. Hartshorn disputed Sonsma's contentions.

25. For several months following the advent of the dispute, Sonsma began a harassment campaign against Hartshorn, the undoubted goal of which was to cause Hartshorn to release his rights under the Letter Agreement.

26. On July 2, 2013 WCC officers presented Hartshorn with an ultimatum: Hartshorn must accept a transfer from the Orange Office to WCC's Downey offices by July 5, 2013, or his employment at WCC would be terminated. To accept the offer, WCC required that Hartshorn execute an agreement that effectively would have waived his rights under the Letter Agreement.

27. Hartshorn refused to waive his rights under the Letter Agreement, and therefore declined to accept the transfer. On July 9, 2013, WCC terminated Hartshorn's employment.

1

2

## COUNT ONE

## (Violation of Section 970 of the California Labor Code by Sonsma)

3      28.    Hartshorn incorporates by reference the allegations contained in paragraphs 1

4   through 27 above, as though fully set forth herein.

5      29.    In the Letter Agreement and otherwise, Sonsma represented to Hartshorn

6   that:

7          A.    Hartshorn would be trained for and succeed to the CEO/COO positions

8                at FBF and WCC; and

9          B.    Hartshorn would gain ownership and profits interests in FBF and

10               WCC after the completion of the vesting periods.

11     30.    Sonsma's representations were false.

12     31.    By making false representations to persuade Hartshorn to end his career at

13   EY and move his family from San Diego to Orange County, Sonsma violated Section 970

14   of the California Labor Code ("the Code").

15     32.    Hartshorn sustained damages as a result of Sonsma's violation of Section 970

16   of the Code.

17     33.    Under Section 972 of the Code, Hartshorn is entitled to recover from Sonsma

18   double the amount of damages resulting from Sonsma's false representations.

19     34.    WCC acted with malice, fraud, or oppression, and Hartshorn should therefore

20   also be awarded punitive damages against WCC for the sake of example and by way of

21   punishing WCC for its wrongful conduct.

22

23

## COUNT TWO

## (Breach of Contract by Sonsma)

24     35.    Hartshorn incorporates by reference the allegations contained in paragraphs 1

25   through 34 above as though fully set forth herein.

26     36.    Since June, 2011, WCC has operated the Orange Office:

27         A.    In the same office space previously occupied by FBF;

28         B.    Using the same equipment and furniture previously used by FBF;

6

COMPLAINT

C. Employing the same personnel previously employed by FBF;

D. Under the same management that previously managed the FBF office, including Sonsma; and

E. Servicing and marketing to the same customers previously serviced and marketed to by FBF.

37. Sonsma owns substantial equity interests in both FBF and WCC.

38. The WCC operation of the Orange Office is merely Sonsma's continuation of the FBF Orange Office under another name.

39. Sonsma breached the Letter Agreement by his refusal to transfer the FBF Interests to Hartshorn following the expiration of the vesting period ("the FBF Breach").

40. Hartshorn is entitled to recover damages from Sonsma for the FBF Breach in an amount equal to 50% of the fair market value of the Orange Office operation.

41. Sonsma's breach of the Letter Agreement with respect to FBF also constitutes an anticipatory breach with respect to his obligation to transfer the WCC Interests to Hartshorn ("the WCC Breach").

42. Hartshorn is entitled to recover damages from Sonsma for the WCC Breach in an amount equal to 25% of the fair market value of WCC, excluding the Orange Office operations.

## COUNT THREE

### (Wrongful Termination by WCC)

43. Hartshorn incorporates by reference the allegations contained in paragraphs 1 through 42 above as though fully set forth herein.

44. By enacting Sections 970-977 of the Code (the "Fraudulent Employment Solicitation Act") the California Legislature expressed a public policy that prospective employees should not be solicited to relocate by false representations by a prospective employer.

45. Sonsma made false representations to Hartshorn to solicit Hartshorn to relocate from San Diego to Orange County to work for WCC.

1    46.    WCC terminated Hartshorn's employment because he refused to sign a
2    document that included provisions that effectively waived his rights under Section 972 of
3    the Code.

4    47.    WCC's termination of Hartshorn's employment for his refusal to waive his
5    claims under Section 972 of the Code is contrary to the very public policy that the
6    Fraudulent Employment Solicitation Act expresses, and was therefore wrongful.

7    48.    Hartshorn is entitled to recover from WCC the actual damages he sustained
8    as a result of the wrongful termination, in an amount to be proven at trial.

9    49.    WCC acted with malice, fraud, or oppression, and Hartshorn should therefore
10   also be awarded punitive damages against WCC for the sake of example and by way of
11   punishing WCC for its wrongful conduct.

12                              **PRAYER FOR RELIEF**

13          WHEREFORE, Plaintiff, Christopher Hartshorn prays for judgment against
14   Defendants, William Sonsma and Wholesale Capital Corporation, as follows:

15                     **ON COUNT ONE – AGAINST SONSMA**

16   1.     For double the amount of the damages Hartshorn sustained resulting from
17   Sonsma's violation of Section 970 of the Code, in an amount to be proven at trial;

18   2.     For punitive damages for the sake of example and by way of punishing
19   Sonsma for the violation;

20   3.     For pre- and post-judgment interest as permitted by applicable law; and

21   4.     For attorneys' fees and court costs incurred herein.

22                     **ON COUNT TWO – AGAINST SONSMA**

23   1.     For damages resulting from the FBF Breach and the WCC Breach, in
24   amounts to be proven at trial;

25   2.     For pre- and post-judgment interest as permitted by applicable law; and

26   3.     For attorneys' fees and court costs incurred herein.

27   ///

28   ///

## ON COUNT THREE – AGAINST WCC

1. For damages resulting from the wrongful termination of Hartshorn's employment by WCC, in an amount to be proven at trial;

2. For punitive damages for the sake of example and by way of punishing WCC for the wrongful termination;

3. For pre- and post-judgment interest as permitted by applicable law; and

4. For attorneys' fees and court costs incurred herein.

## ON ALL COUNTS

1. For such other and further relief as the Court deems appropriate under the circumstances.

Dated: November 18, 2013                    BIENERT, MILLER & KATZMAN, PLC

By: _____
    Michael R. Williams
    Attorneys for Plaintiff
    CHRISTOPHER HARTSHORN

1

**DEMAND FOR JURY TRIAL**

2        Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury

3    trial on all issues so triable that are raised by this complaint.

4    Dated:  November 18, 2013                    BIENERT, MILLER & KATZMAN, PLC

5

6

7                                                By:  _____
                                                      Michael R. Williams
8                                                     Attorneys for Plaintiff
                                                      CHRISTOPHER HARTSHORN
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28